# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **SOUTHWEST AIRLINES CO.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | |
| **AIRCRAFT MECHANICS FRATERNAL** § | **CIVIL ACTION NO. _____** |
| **ASSOCIATION; BRET OESTREICH;** § | |
| **GENE PAINTER; AIRCRAFT** § | **COMPLAINT** |
| **MECHANICS FRATERNAL** § | |
| **ASSOCIATION, LOCAL 11; EARL** § | |
| **CLARK; MICHAEL NELSON; ROBERT** § | |
| **CRAMER; CRAIG HAMLET; SHANE** § | |
| **FLACHMAN; MICHAEL YOUNG** § | |
| § | |
| **Defendants.** § | |

## PLAINTIFF SOUTHWEST AIRLINE CO.'S ORIGINAL COMPLAINT

Southwest Airlines Co. ("Southwest" or the "Company") files this action for violations of the Railway Labor Act ("RLA" or the "Act"), 45 U.S.C. § 151 *et seq*. Southwest brings this action for declaratory relief, injunctive relief, and damages in connection with Defendants' unlawful job action in violation of the Railway Labor Act.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. The Court also has jurisdiction under 28 U.S.C. § 1337 because this action arises under a statute that regulates commerce or protects trade and commerce against restraints.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in

this judicial district and because Defendants engage in collective bargaining and the representation of Southwest employees in this judicial district.

## PARTIES

3. Southwest is a corporation organized and existing under the laws of the State of Texas and having offices and its principal place of business at 2702 Love Field Drive, Dallas, TX 75235. Southwest is a "common carrier" by air engaged in interstate or foreign commerce under 45 U.S.C. § 181 and is subject to the provisions of the RLA.

4. Defendant Aircraft Mechanics Fraternal Association ("AMFA") is a labor organization with its principal offices located at 14001 East Iliff Avenue, Suite 217, Aurora, Colorado 80014. AMFA is the exclusive collective bargaining representative under the RLA for the nationwide craft or class of Mechanics and Related Employees employed by Southwest.

5. AMFA represents the approximately 2,400 Southwest Mechanics and Related Employees on a systemwide basis. Southwest's largest aircraft maintenance facility is located in Dallas, Texas, and Southwest employs more mechanics in Dallas than in any other location.

6. As part of the current and ongoing negotiations for a nationwide collective bargaining agreement between Southwest and AMFA, AMFA's officers and bargaining committee members have met with Southwest in Dallas, Texas approximately 42 times.

7. The following Individual Defendants are officers of AMFA who act in their identified positions pursuant to the AMFA Constitution: Bret Oestreich, National Director; and Gene Painter, Assistant National Director. Oestreich and Painter each maintain offices in AMFA's principal office in Aurora, Colorado.

8. AMFA also has chartered Local Unions, including Locals 4, 11, 18, and 32, as agents of AMFA to represent Southwest employees in locations throughout the United States as part of the nationwide bargaining unit.

9. Defendant Aircraft Mechanics Fraternal Association, Local 11 is a chartered Local of the Aircraft Mechanics Fraternal Association. AMFA Local 11 represents over 960 Southwest employees stationed at airports located in Dallas, Texas; Austin, Texas; San Antonio, Texas; El Paso, Texas; and Oklahoma City, Oklahoma. AMFA Local 11's principal offices are located at 1450 Empire Central, Suite 11, Dallas, Texas 75247.

10. The following Individual Defendants are members of AMFA's bargaining committee responsible for negotiating a successor Southwest-AMFA collective bargaining agreement and are AMFA agents: Bret Oestrich, National Director; Earl Clark, Region I Director; Michael Nelson, Interim Region II Director; Robert Cramer, AMFA Local 4 Airline Representative; Craig Hamlet, AMFA Local 11 Airline Representative; Shane Flachman, AMFA Local 18 Airline Representative; and Michael Young, AMFA Local 32 Airline Representative.

11. Clark and Nelson each maintain an office in AMFA's principal office in Aurora, Colorado. Cramer maintains an office at AMFA, Local 4's offices at 9624 S. Cicero Avenue, No. 356, Oak Lawn, Illinois 60453. Hamlet maintains an office at AMFA, Local 11's Dallas, Texas office. Flachman maintains an office at AMFA, Local 18's office at 9001 Airport Boulevard, Suite 512, Houston, Texas 77061. Young maintains an office at AMFA, Local 32's office at 3414 S. 48th Street, Suite 109, Phoenix, Arizona 85040.

## SOUTHWEST'S AIRLINE OPERATIONS

12. Southwest is a scheduled air carrier engaged in interstate and foreign transportation of passengers and freight.

13. Southwest is one of the largest scheduled passenger airlines in the world and the largest carrier in the United States in terms of originating domestic passengers boarded. Southwest serves a network of over 100 destinations across the United States and eight additional countries with approximately 3,900 departures a day during peak travel season. Southwest employs more than 53,000 individuals, and serves over 145 million customers annually. Southwest is an integral part of the country's air transportation system, connecting and interchanging freight and passengers with many other carriers, both inside and outside the airline industry.

14. Southwest maintains substantial facilities and has an investment in operating equipment and property, related to this Complaint, exceeding hundreds of millions of dollars in value.

## THE SOUTHWEST – AMFA COLLECTIVE BARGAINING AGREEMENT

15. Southwest and AMFA are parties to a systemwide collective bargaining agreement that sets the rates of pay, rules, and working conditions for the craft or class of Mechanics and Related Employees employed by Southwest nationwide. The most recent collective bargaining agreement ("CBA" or the "Agreement") between Southwest and AMFA was effective as of August 16, 2008 and became amendable on August 16, 2012.

16. Article 23 of the Collective Bargaining Agreement states that "[d]uring the term of this Agreement . . . the Union will not authorize or take part in any strike or picketing of Company premises."

17. Pursuant to Section 6 and Section 2, First of the RLA, the rates of pay, rules, and working conditions under the CBA continue in effect while the parties negotiate for a successor agreement. 45 U.S.C. §§ 156, 152, First. Accordingly, Southwest and AMFA remain subject to

a statutory *status quo* obligation under the RLA.  Under Section 2, First, the RLA imposes an affirmative legal duty on the union to make every reasonable effort to prevent or end strikes or other concerted work actions, such as refusals to work.

18. The RLA also sets forth a detailed sequence of steps that are required to occur during the renegotiation of a collective bargaining agreement.  In progression, those steps include negotiations between the parties, mandatory mediation before the National Mediation Board ("NMB"), possibly followed by binding interest arbitration or a Presidential Emergency Board.  All such efforts to reach an agreement must be exhausted, including a 30-day "cooling-off" period following a release from mediation or any Presidential Emergency Board proceedings, before the parties are permitted to engage in self-help, such as strikes or other concerted refusals to work.

19. Southwest and AMFA have been in collective bargaining negotiations for modifications to the Agreement since shortly after the Agreement became amendable in August 2012.  Since August 2012, the parties have met 48 times to discuss key terms and issues in contract negotiations.

20. In 2015, having not yet successfully reached agreement on a successor collective bargaining agreement, the parties began a formal mediation process under the supervision of the NMB.  The parties have conducted 16 mediation sessions since November 2015.

21. Under the RLA, the NMB controls the pace of mediating a dispute over contract negotiations.

22. The NMB has not released the parties from mediation.  As a result, neither party is lawfully permitted to engage in strikes, lockouts, or other economic self-help.  At this juncture, any such self-help violates the RLA.

## **THE UNLAWFUL JOB ACTION**

23. Southwest's operations rely on a relatively consistent level of overtime hours by AMFA-represented employees to perform necessary maintenance work.

24. The filling of overtime positions for AMFA-represented mechanics employed by Southwest occurs in three general steps. First, employees sign up in advance indicating they are willing to work an overtime shift. Second, Southwest determines how many overtime slots it needs to fill on a given day. Third, Southwest contacts the employees who signed up for overtime to confirm if they will work the available overtime on a given day.

25. In early February 2017, Southwest learned that AMFA and AMFA-represented employees were organizing and encouraging a group boycott of overtime work from February 10, 2017 to February 20, 2017.

26. Since Thursday, February 9, 2017, Southwest managers received additional information that AMFA-represented employees were being encouraged by several AMFA agents to decline overtime work.

27. Southwest then observed a stark drop – approximately a 75% reduction – in the number of AMFA-represented employees who signed up for overtime and those who actually accepted overtime assignments in Dallas and other Southwest maintenance facilities for the weekend of February 11-12, 2017.

28. On Friday, February 10, 2017, during the morning, Southwest sent letters to AMFA's counsel and to AMFA's National Director and the Presidents of AMFA's four locals at Southwest communicating that concerted refusals to work overtime are unlawful while the parties remain engaged in collective bargaining and mandatory mediation under the RLA. Southwest asked that AMFA take prompt action to halt the concerted job action.

29. On Sunday, February 12, 2017, AMFA sent out a single notice to AMFA-represented employees at Southwest indicating that it did not call for an overtime boycott and stating that determinations not to volunteer for overtime must be made on an individualized basis. Although the notice is dated February 11, 2017, AMFA waited until Sunday, February 12, around noon, to distribute this one notice.

30. AMFA's February 12, 2017 notice was ineffective at stopping the job action, and AFMA-represented employees continue to engage in a concerted boycott of overtime work. In some cases, the overtime boycott increased in intensity after AMFA's notice.

31. In Southwest's Dallas, TX operations, the numbers of AMFA-represented employees signing up for overtime and accepting overtime is drastically below expected levels since the job action began on February 10, 2017:

|  | **Employees Signed up for Overtime Slots** | **Overtime Slots Available** | **Overtime Slots Filled** | **Percentage of Slots Filled** |
|---|---|---|---|---|
| Fri. Jan. 20 | 91 | 42 | 40 | 95% |
| Sat. Jan. 21 | 102 | 60 | 58 | 97% |
| Sun. Jan. 22 | 101 | 55 | 54 | 98% |
| Mon. Jan. 23 | 78 | 43 | 40 | 93% |
| Fri. Jan. 27 | 101 | 49 | 49 | 100% |
| Sat. Jan. 28 | 114 | 63 | 63 | 100% |
| Sun. Jan. 29 | 122 | 61 | 61 | 100% |
| Mon. Jan. 30 | 101 | 22 | 22 | 100% |
| Fri. Feb. 3 | 86 | 33 | 30 | 91% |
| Sat. Feb. 4 | 106 | 59 | 59 | 100% |
| Sun. Feb. 5 | 100 | 57 | 53 | 93% |
| Mon. Feb. 6 | 91 | 40 | 39 | 98% |
| Tues. Feb. 7 | 108 | 65 | 65 | 100% |
| Web. Feb. 8 | 124 | 38 | 39 | 100% |
| Thurs. Feb. 9 | 128 | 50 | 51 | 100% |
| **Fri. Feb. 10** | **30** | 44 | **16** | **36%** |
| **Sat. Feb. 11** | **37** | 66 | **15** | **23%** |
| **Sun. Feb. 12** | **38** | 67 | **7** | **10%** |
| **Mon. Feb. 13** | **22** | 29 | **8** | **28%** |
| **Tues. Feb. 14** | **25** | 23 | **5** | **22%** |

32. The concerted refusal to sign up for overtime work was not limited to Southwest's Dallas, TX operations. The Company experienced similar steep drop-offs at other maintenance facilities. A drastically lower number of AMFA-represented employees have signed up for, and accepted, overtime in Chicago, IL as well:

| Date | Employees Signed up for Overtime Slots | Overtime Slots Available | Overtime Slots Filled | Percentage of Slots Filled |
|---|---|---|---|---|
| Fri. Jan. 20 | 40 | 10 | 8 | 90% |
| Sat. Jan. 21 | 43 | 5 | 5 | 100% |
| Sun. Jan. 22 | 53 | 7 | 7 | 100% |
| Mon. Jan. 23 | 51 | 6 | 6 | 100% |
| Fri. Jan. 27 | 45 | 6 | 6 | 100% |
| Sat. Jan. 28 | 42 | 4 | 4 | 100% |
| Sun. Jan. 29 | 47 | 5 | 4 | 80% |
| Mon. Jan. 30 | 47 | 13 | 13 | 100% |
| Fri. Feb. 3 | 48 | 3 | 3 | 100% |
| Sat. Feb. 4 | 44 | 9 | 9 | 100% |
| Sun. Feb. 5 | 52 | 7 | 6 | 86% |
| Mon. Feb. 6 | 51 | 13 | 11 | 85% |
| Tues. Feb. 7 | 60 | 43 | 38 | 88% |
| Wed. Feb. 8 | 55 | 13 | 11 | 85% |
| Thur. Feb. 9 | 55 | 18 | 21 | 100% |
| **Fri. Feb. 10** | **16** | **8** | **3** | **38%** |
| **Sat. Feb. 11** | **13** | **17** | **0** | **0%** |
| **Sun. Feb. 12** | **8** | **7** | **0** | **0%** |
| **Mon. Feb. 13** | **9** | **16** | **1** | **6%** |
| **Tues. Feb. 14** | **10** | **2** | **0** | **0%** |

33. Further, Southwest's Phoenix, AZ operations have experienced a sustained reduction in AMFA-represented employees signing up for and accepting overtime assignments:

| Date | Employees Signed up for Overtime Slots | Overtime Slots Available | Overtime Slots Filled | Percentage of Slots Filled |
|---|---|---|---|---|
| Fri. Jan. 20 | 47 | 19 | 13 | 68% |
| Sat. Jan. 21 | 37 | 19 | 11 | 57% |
| Sun. Jan. 22 | 37 | 14 | 13 | 92% |
| Mon. Jan. 23 | 42 | 18 | 14 | 77% |

| | | | | |
|---|---|---|---|---|
| Fri. Jan. 27 | 47 | 17 | 16 | 94% |
| Sat. Jan. 28 | 38 | 12 | 12 | 100% |
| Sun. Jan. 29 | 39 | 10 | 10 | 100% |
| Mon. Jan. 30 | 56 | 22 | 20 | 91% |
| Fri. Feb. 3 | 41 | 28 | 27 | 96% |
| Sat. Feb. 4 | 33 | 17 | 16 | 94% |
| Sun. Feb. 5 | 27 | 17 | 15 | 88% |
| Mon. Feb. 6 | 45 | 18 | 17 | 94% |
| Tues. Feb. 7 | 57 | 33 | 31 | 94% |
| Wed. Feb. 8 | 63 | 14 | 14 | 100% |
| Thur. Feb. 9 | 58 | 10 | 11 | 100% |
| **Fri. Feb. 10** | **31** | **11** | **7** | **64%** |
| **Sat. Feb. 11** | **23** | **11** | **6** | **55%** |
| **Sun. Feb. 12** | **23** | **8** | **5** | **63%** |
| **Mon. Feb. 13** | **23** | **9** | **4** | **44%** |
| **Tues. Feb. 14** | **22** | **13** | **6** | **46%** |

34. Due to these concerted refusals to sign up for overtime work, Southwest has been forced to cover the operation by making alternative staffing arrangements to complete necessary maintenance work, including through use of third party vendors. This has resulted in ongoing operational and financial impact to Southwest, which otherwise would not have been incurred absent the illegal job action.

35. The above job action that began on February 10, 2017, and AMFA's failure to prevent and/or end the job action, contrasts with AMFA's previous exercise of its power to prevent and/or end similar overtime boycotts by AMFA-represented employees. For instance, in May 2016, Southwest learned of a concerted effort to reject overtime, and AMFA timely exercised its power to stop such activity within 24 hours.

36. Similarly, in early June 2016, Southwest management representatives received reports that some AMFA representatives had pressured Houston technicians to refuse overtime. Overtime signups dropped substantially, and Southwest notified AMFA. AMFA effectively exercised its power to timely end the unlawful job action.

37. Upon information and belief, AMFA has not taken any other steps to prevent its members from refusing overtime on a group basis besides the single, ineffective notice sent on February 12, 2017, such as sending additional electronic communications, having in-person communications, and ensuring that its Local Unions and agents have adequately communicated that employees must cease the unlawful job action.

38. Upon information and belief, AMFA's agents, officers, and representatives, including Local 11 and members of AMFA's bargaining committee named as Individual Defendants, have explicitly and/or implicitly condoned and ratified the concerted refusal to accept overtime. AMFA and its agents, officers, and representatives also have undertaken only minimal, delayed, and ineffective efforts to stop the unlawful job action.

## IRREPARABLE HARM

39. Defendants' actions are intended to, and likely will, cause irreparable injury to Southwest and to the public if they are not enjoined.

40. As AMFA is well aware, an ongoing concerted refusal to accept overtime assignments may result in foregone or delayed maintenance, expanded use of third party vendors, and potential delay or cancellation of flights. Any delay or cancellation of flights would inconvenience thousands of passengers and adversely affect the national transportation system.

41. If a concerted refusal to accept overtime work were to force Southwest to cancel flights, it would recover little of the revenue it would have earned from passengers on those flights.

42. Southwest also incurs expenses related to delays and cancellations through increased labor expenses and costs related to providing customers with alternative travel, food,

luggage delivery and hotel expenses.  Southwest also suffers harm to its reputation and goodwill as a result of such delays, cancellations, and inconvenience to its customers.

43. Southwest's experience has shown that passengers whose flights are cancelled may not postpone their travel on Southwest but may make alternative arrangements on other airlines.  Southwest not only loses the revenue from the flight at issue, but for outbound passengers, it may well lose the revenue that would be gained from the return flight as well.  In addition, passengers are more likely to turn away from Southwest for their future travel plans.

44. The irreparable harm from AMFA's job action also impacts other parts of the national transportation system.  Southwest's operations are a vital part of the national and international passenger and freight transportation system that may experience disruption should the unlawful job action not cease immediately.  Such disruption would deprive the public of efficient and timely transportation services.

45. In short, the damages and loss of goodwill that Southwest may suffer if AMFA's unlawful job action is not enjoined are unquantifiable, immediate, and irreparable.

46. As to each item of relief sought, greater injury will be inflicted on the public and upon Southwest if such relief is denied than will be inflicted upon the Defendants by the granting of the relief sought.

## COUNT I
### Violation of Railway Labor Act Section 6
### 45 U.S.C. § 156

47. Southwest re-alleges and incorporates by reference the allegations contained in the preceding paragraphs numbered 1 - 46 as if they were fully set forth in this paragraph.

48. The Defendants are attempting to change the rates of pay, rules and working conditions provided for in the Agreement between Southwest and AMFA by engaging in

unprotected concerted activity without first exhausting the RLA's major dispute resolution procedures.

49. The concerted refusal to work orchestrated, condoned, and/or ratified by the Defendants, and those mechanics and related employees acting in concert with Defendants, constitutes a breach of AMFA's *status quo* obligation under Section 6 of the RLA, 45 U.S.C. § 156, which prohibits the use of economic self-help prior to the expiration of the statutory negotiation and mediation procedures specified in Sections 5 and 6 of the RLA.  45 U.S.C. §§ 155, 156.

50. Southwest is entitled to declaratory relief, injunctive relief, and damages for Defendants' unlawful concerted self-help activity that violates Section 6 of the RLA, 45 U.S.C. § 156.

## COUNT II
### Violation of Railway Labor Act Section 2 First
### 45 U.S.C. § 152 First
### Encouragement/Ratification of the Unlawful Job Action

51. Southwest re-alleges and incorporates by reference the allegations contained in the preceding paragraphs numbered 1 - 46 as if they were fully set forth in this paragraph.

52. The actions of Defendants' agents, officers, and representatives, including the Individual Defendants, to orchestrate, condone and/or ratify, implicitly or explicitly, the unlawful self-help activity of AMFA-represented employees constitutes a breach of AMFA's obligations under Section 2 First of the RLA, 45 U.S.C. § 152 First, to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions and to settle all disputes," so as to avoid any interruption to commerce or to Southwest's operations.

53. An injunction is the only practical and effective means to compel compliance with the Defendants' statutory duty under Section 2 First of the RLA, 45 U.S.C. § 152 First in Count II.

54. Southwest is entitled to declaratory relief and injunctive relief for Defendants' violation of Section 2 First of the RLA, 45 U.S.C. § 152 First.

**COUNT III**
**Violation of Railway Labor Act Section 2 First**
**45 U.S.C. § 152 First**
**Failure to Take Every Reasonable Effort to Stop the Unlawful Job Action**

55. Southwest re-alleges and incorporates by reference the allegations contained in the preceding paragraphs numbered 1 - 46 as if they were fully set forth in this paragraph.

56. AMFA's February 12, 2017 single notice was ineffective as the concerted refusal to accept overtime has continued since it issued, and Southwest has received no information from AMFA or its agents on other efforts, through electronic or in-person communications, to cease the job action.

57. Defendants have an obligation to take every reasonable effort to prevent and end AMFA-represented employees from engaging in unlawful self-help activity. Defendants have not exhausted all reasonable efforts, including sending personalized electronic communications to employees, having in-person communications with employees, and ensuring that AMFA Locals and agents have adequately communicated with employees to immediately cease the unlawful job action.

58. The Defendants' failure to take all reasonable steps to prevent AMFA-represented employees from engaging in unlawful self-help activity constitutes a breach of their obligations under Section 2 First of the RLA, 45 U.S.C. § 152 First, to "exert every reasonable effort to

make and maintain agreements concerning rates of pay, rules, and working conditions and to settle all disputes," so as to avoid any interruption to commerce or to Southwest's operations.

59. An injunction directing the Defendants to take all reasonable steps to prevent and/or end unlawful self-help activity is the only practical and effective means to compel compliance with the Defendants' statutory duty under Section 2 First of the RLA, 45 U.S.C. § 152 First.

60. Southwest is entitled to declaratory relief and injunctive relief for Defendants' violation of Section 2 First of the RLA, 45 U.S.C. § 152 First.

### RELIEF REQUESTED

WHEREFORE, Southwest prays that this Court:

1. Issue a declaratory judgment holding that the Defendants' conduct constitutes unlawful self-help and/or failure to take reasonable steps to end the unlawful self-help in violation of Section 6 and Section 2, First of the RLA, 45 U.S.C. §§ 156 & 152 First;

2. Issue a permanent injunction restraining and enjoining AMFA and the Individual Defendants, in their personal capacities as well as their capacities as officers of AMFA, and their agents, successors, deputies, servants, and employees, and all persons acting by, in concert with, through or under Defendants or by and through their orders:

   a. From calling, permitting, instigating, authorizing, encouraging, participating in, approving of, or continuing any delay, any disruption, curtailment or restriction of Southwest's normal airline operations, including but not limited to strikes, concerted refusals to accept overtime, and/or other forms of self-help, or otherwise interfering with the operations of Southwest.

   b. Ordering that the said Defendants and said other persons acting in concert with

       them shall immediately take all reasonable steps within their power to prevent the aforesaid actions from continuing, and to refrain from continuing the aforesaid actions.

c.      Ordering that the said Defendants shall immediately instruct all AMFA-represented mechanics and related employees employed by Southwest to cease all premature job actions.

d.      Ordering that the said Defendants notify, by the most expeditious means possible, all AMFA-represented mechanics and related employees employed by Southwest of the issuance, contents and meaning of this Injunction Order and provide Southwest with a copy of all such notices.

e.      Ordering that the notices described in paragraphs (c) and (d) above include a directive from AMFA to all AMFA-represented mechanics and related employees employed by Southwest who are engaging in the aforesaid actions to immediately cease and desist all such activity and to immediately cease and desist all exhortations or communications encouraging same.

f.      Ordering that the Defendants post this Court's Order on all AMFA bulletin boards at Southwest's facilities and publish in all AMFA publications and include and/or transmit the contents of this Court's Order in all recorded telephone hotlines, websites or other methods of electronic communications under control of Defendants, or any of them, and provide a transcription of all such messages to Southwest.

g.      Ordering that the Defendants report to the Court, by sworn affidavit, the methods used to effect the notices described in the paragraphs above to all AMFA-

represented mechanics and related employees employed by Southwest; and

3. Award damages for the costs that Southwest has incurred in responding to the Defendants' illegal job action and violation of Section 6, including but not limited to the costs of obtaining necessary staffing and third party vendor coverage due to the coordinated refusal to accept overtime assignments and any subsequent illegal job actions or coordinated efforts to disrupt Southwest's operations.

Southwest further prays for such other and further relief, including but not limited to attorneys' fees and costs, as the Court may deem proper.

Dated: February 15, 2017                    Respectfully submitted,

/s Ann Marie Arcadi

Ann Marie Arcadi
Bar No. 00786994
Michael A. Correll
Bar No. 24069537
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
annmarie.arcadi@morganlewis.com
michael.correll@morganlewis.com
Tel: 214-466-4166
Fax: 214-466-4001

Thomas E. Reinert, Jr.
(*pro hac pending*)
David Broderdorf
(*pro hac pending*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. N.W.
Washington, D.C. 20004
thomas.reinert@morganlewis.com
david.broderdorf@morganlewis.com
Tel: 202-739-3000
Fax: 202-739-3001