**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AIRCRAFT MECHANICS FRATERNAL** | § | **CIVIL ACTION NO. 3:17-cv-00431-N** |
| **ASSOCIATION; BRET OESTREICH;** | § | |
| **GENE PAINTER; AIRCRAFT** | § | |
| **MECHANICS FRATERNAL** | § | |
| **ASSOCIATION, LOCAL 11; EARL** | § | |
| **CLARK; MICHAEL NELSON; ROBERT** | § | |
| **CRAMER; CRAIG HAMLET; SHANE** | § | |
| **FLACHMAN; and MICHAEL YOUNG,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF
SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS COUNTERCLAIM**</u>

## <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.      The Parties and Their Collective Bargaining Agreement ....................... 2

        B.      AMFA's Unlawful, Concerted Refusal to Work Overtime ..................... 3

        C.      AMFA's Counterclaim: The Underlying Grievances ............................. 4

III.    STANDARD ....................................................................................................... 7

        A.      Lack of Subject Matter Jurisdiction ....................................................... 7

IV.     ARGUMENT ...................................................................................................... 7

        A.      The RLA Imposes a Heavy Presumption In Favor of Arbitration .......... 8

        B.      Each Component of AMFA's Counterclaim Is a Minor Dispute Requiring
                Contractual Interpretation, and Southwest's Position as to Each Dispute Is
                Arguably Justified .................................................................................. 9

                1.      The parties' disagreement regarding the alleged outsourcing of
                        select maintenance work is a minor dispute ........................... 10

                2.      The parties' disagreement regarding the termination of an AMFA
                        Shop Representative is a minor dispute that has already been
                        resolved in arbitration. .......................................................... 11

                3.      The parties' disagreement regarding the denial of some AMFA
                        requests for Union Business Leave is a minor dispute. ........... 13

V.      CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*,
  863 F.2d 891 (D.C. Cir. 1988) ..................................................................................2

*Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*,
  768 F.2d 914 (7th Cir. 1985) ..................................................................................9

*Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*,
  876 F.3d 261 (7th Cir. 2017) ...................................................................1, 8, 9, 11

*Bhd. of Maint. of Way Emps. v. Atchison, Topeka & Santa Fe R.R. Co.*,
  138 F.3d 635 (7th Cir. 1997) ..................................................................................9

*In re The Complaint of RLB Contracting, Inc.*,
  773 F.3d 596 (5th Cir. 2014) ..................................................................................7

*Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*,
  491 U.S. 299 (1989)........................................................................................1, 8, 9

*Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*,
  396 U.S. 142 (1969)................................................................................................2

*Elgin, J. & E. Ry. Co. v. Burley*,
  325 U.S. 711 (1945)............................................................................................1, 8

*Gen. Comm. of Adjustment, United Transp. Union v. CSX R.R.*,
  893 F.2d 584 (3d Cir. 1990)....................................................................................9

*Int'l Bhd. of Teamsters v. Southwest Airlines Co.*,
  875 F.2d 1129 (5th Cir. 1989) ............................................................................8, 9

*Montez v. Dep't of Navy*,
  392 F.3d 147 (5th Cir. 2004) ..................................................................................7

*Sanders v. Zwicker & Assocs., P.C.*,
  No. 3:13-CV-3998-N, 2014 WL 11456070 (N.D. Tex. Sept. 9, 2014) ...................7

*Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*,
  809 F.2d 483 (8th Cir. 1987), *aff'd* 485 U.S. 175 (1988) .......................................2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Statutes**

45 U.S.C. § 151 .................................................................................................................................2

45 U.S.C. § 153 .......................................................................................................................1, 8, 9

45 U.S.C. § 156 .................................................................................................................................1

45 U.S.C. § 181 .................................................................................................................................2

45 U.S.C. § 184 .......................................................................................................................1, 8, 9

## I.        INTRODUCTION

On February 15, 2017, Southwest Airlines Co. ("Southwest") filed the above-styled

lawsuit in an effort to stop an illegal overtime boycott instituted by the Aircraft Mechanics

Fraternal Association ("AMFA" or the "Union") and its membership.  In response, AMFA filed

a three-part Counterclaim against Southwest that, in reality, asserted nothing more than three

"minor disputes" as defined by the Railway Labor Act ("RLA").  Because the Court has no

subject matter jurisdiction over "minor disputes," AMFA's Counterclaim should be dismissed.

AMFA's Counterclaim asserts that Southwest violated multiple provisions of the parties'

collective bargaining agreement ("CBA").  Specifically, AMFA alleges that Southwest

(i) outsourced maintenance work in violation of Article 2 of the CBA; (ii) terminated an AMFA

Shop Representative in violation of the "just cause" provisions in the CBA; and (iii) denied valid

requests for "Union Business Leave" in violation of Article 25, Section 5 of the CBA.  Though

AMFA attempts to style its Counterclaim as a "status quo" violation under Section 6 of the RLA,

45 U.S.C. § 156, each of these disputes can be resolved by interpreting and applying the CBA.

Established authority holds that disputes that can be resolved by interpreting and applying

a CBA constitute "minor disputes."  *E.g.*, *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723

(1945).  The same authority holds that federal courts lack subject matter jurisdiction over such

"minor disputes."  *E.g.*, *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 304 (1989)

("*Conrail*"); *see also, e.g.*, *Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*, 876 F.3d 261,

264-67 (7th Cir. 2017).  Instead, the RLA grants exclusive jurisdiction over "minor disputes" to

"system boards"—in other words, labor arbitration.  *See* 45 U.S.C. §§ 153 First (*i*) & 184.

Indeed, AMFA already has utilized the parties' contractual arbitration mechanism to prosecute

these very disputes within the labor arbitration system, and one dispute has already been fully

resolved to a final and binding arbitration award.

Thus, the RLA does not permit AMFA's Counterclaim to be heard in this forum.

Accordingly, AMFA's Counterclaim should be dismissed for lack of subject matter jurisdiction.

## II.    **BACKGROUND**

### A.    **The Parties and Their Collective Bargaining Agreement**

Southwest is one of the largest scheduled passenger airlines in the world and the largest carrier in the United States in terms of originating domestic passengers boarded.[1]  Southwest serves a network of over 100 destinations across the United States and eight additional countries with approximately 3,900 departures a day during peak travel season.[2]  Southwest employs more than 56,000 individuals, and serves over 145 million customers annually.[3]  In that capacity, Southwest is a "common carrier" by air engaged in interstate or foreign commerce under 45 U.S.C. § 181.  Southwest is therefore subject to the provisions of the RLA.

AMFA is a representative or labor union within the definition of the RLA, 45 U.S.C. § 151, Sixth.  The National Mediation Board ("NMB") has certified AMFA to be the exclusive, nationwide collective bargaining representative of Southwest's approximately 2,400 mechanics and related employees.[4]

Southwest and AMFA are parties to a CBA that remains in effect pending ratification of a new agreement.[5]  The parties' current agreement took effect on August 16, 2008, and became

---

[1] Plaintiff's Motion to Dismiss Appendix ("Pl.'s MTD App.") 81-82 at ¶ 3.

[2] Pl.'s MTD App. 81-82 at ¶ 3.

[3] Pl.'s MTD App. 81-82 at ¶ 3.

[4] Pl.'s MTD App. 82 at ¶ 4.

[5] Under the RLA, CBAs do not expire.  *See Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 149 (1969) (describing bargaining procedures under the RLA). Rather, in the airline industry, and at Southwest, the practice is for contracts to become "amendable" on a date certain.  *See Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 809 F.2d 483, 484 (8th Cir. 1987), *aff'd mem. by an equally divided court*, 485 U.S. 175 (1988).  While the parties to an agreement are bargaining over the terms of a successor agreement, the prior/existing agreement remains in effect until a new, comprehensive CBA is ratified.  *E.g.*, *Air Line Pilots Ass'n Int'l v. E. Air Lines, Inc.*, 863 F.2d 891, 895 (D.C. Cir. 1988).

amendable on August 16, 2012.[6]  Since that time, the parties have engaged in contract
negotiations on a regular basis.[7]  Since 2015, the parties have continued to engage in mediation
sessions with the NMB.[8]

###    B.    AMFA's Unlawful, Concerted Refusal to Work Overtime

As described at length in Southwest's memorandum in support of its motion for partial
summary judgment,[9] in February 2017 AMFA and its membership engaged in a coordinated,
nationwide "job action" to boycott overtime work and disrupt Southwest's airline operations.  At
several of Southwest's aircraft maintenance facilities across the country—including some of
Southwest's largest facilities in Dallas, Chicago, and Phoenix—AMFA members concertedly
refused to sign up to work overtime maintenance shifts and refused to respond to phone calls
from Southwest seeking mechanics willing to fill available overtime positions.[10]  Between
February 10 and February 20, 2017, Southwest observed a significant decrease in the number of
AMFA mechanics working overtime maintenance shifts—including nearly a 75% reduction at
Southwest's largest maintenance facility in Dallas.[11]  Because overtime work is an important
aspect of Southwest's maintenance operation, AMFA members' refusal to work overtime could
have snowballed in a matter of days to a debilitating crisis to the overall system, on par with a
natural disaster or other mass grounding event.[12]  Southwest, through its regional maintenance
managers and directors, had to take immediate action to respond to this overtime boycott.[13]

---

[6] Pl.'s MTD App. 82 at ¶ 5.
[7] Pl.'s MTD App. 82 at ¶ 5.
[8] Pl.'s MTD App. 82 at ¶ 5.
[9] ECF No. 37.
[10] Pl.'s MTD App. 76-79 at ¶¶ 6-14; ECF No. 37 at 9-15.
[11] Pl.'s MTD App. 77 at ¶ 8; ECF No. 37 at 10-12.
[12] Pl.'s MTD App. 77-78 at ¶¶ 9-10.
[13] Pl.'s MTD App. 78 at ¶ 11.

To mitigate the harm caused by AMFA's overtime refusal, Southwest exercised its
contractual right to outsource select maintenance tasks, including what are known as "C-
Checks"—a form of scheduled aircraft maintenance requiring approximately 250 labor hours for
each aircraft.[14]  Southwest ultimately outsourced 10 C-Checks during the job action period in
February 2017.[15]  Due to the staffing shortage caused by AMFA's overtime refusal, Southwest
also exercised its contractual right to deny AMFA members' requests for "Union Business
Leave"—a form of excused absence afforded to union members under the parties' CBA.[16]
Further, after evidence surfaced that an AMFA Shop Representative in Dallas actively engaged
in the unlawful job action and encouraged other AMFA members not to accept overtime
assignments, Southwest terminated that individual, after a thorough investigation and formal
hearing, under the labor contract disciplinary process.[17]

### C.    AMFA's Counterclaim: The Underlying Grievances

AMFA's Counterclaim is comprised of three underlying grievances, each of which arises
from a dispute regarding the proper interpretation of the terms of the parties' CBA.

*First*, AMFA alleges that Southwest breached a specific provision of the parties' CBA by
outsourcing with third parties to perform certain aircraft maintenance work in February 2017.[18]
AMFA argues that Southwest's decision to "outsource" ten C-Checks during this period was
"extra-contractual"—i.e., not authorized under the parties' CBA.[19]  AMFA has filed eight
separate grievances on this issue.[20]  Southwest's ability to subcontract certain work is governed

---

[14] Pl.'s MTD App. 78 at ¶ 11.
[15] Pl.'s MTD App. 78 at ¶ 11.
[16] Pl.'s MTD App. 1-7.
[17] Pl.'s MTD App. 8-9.
[18] ECF No. 20, Countercl. ¶¶ 13-23.
[19] ECF No. 20, Countercl. ¶ 18.
[20] Pl.'s MTD App. 10-17; Pl.'s MTD App. 22 (80:1-23).

by Article 2 of the CBA, which addresses the "scope" of the parties' agreement.[21]  Specifically,

Article 2 provides, in relevant part, as follows:

> 3. The Company shall not contract out work when such contracting out results, or will result, in a reduction in force for any Employee covered by this Agreement.  **The parties agree that the Company may** (a) continue to contract out work heretofore customarily contracted out, subject to this Article and the parties' subsequent agreements to increase work done in-house, (b) return equipment parts or assemblies to the manufacturer or to a manufacturer-approved repair station for repair or replacement, **(c) contract out any work when the Company's facilities and equipment are not sufficient, or qualified personnel are not available,** or where Employees available do not have the experience and ability to perform the work required, and (d) contract out work at any location where such work has not heretofore been performed by unit Employees on a regular basis, or at any location where the Company has not heretofore maintained permanent maintenance facilities or Employees.  If the Company has need for contracting out work presently performed by Employees covered by this Agreement, the Company will so notify the Union by written notice on a form agreed on by the parties.  The Company will notify the Union of new or additional subcontracting in writing on a form agreed on by the parties.
>
> . . .
>
> 6. All Y checks, all MSG-3 work, and all work currently designated as intermediate maintenance, including, but not limited to, C Checks, CVs, and HRON, is recognized as coming within the jurisdiction of the Union and shall be performed by Employees subject to this Agreement **unless otherwise provided in this Article**, regardless of whatever designation, name, or interval is applied to such work in the future.[22]

*Second*, AMFA alleges that Southwest improperly terminated AMFA Shop

Representative Kenneth Hackett following a fact-finding hearing regarding Hackett's role in the

unlawful job action.[23]  Southwest has consistently maintained that it followed the parties'

established contractual procedures throughout its investigation into Hackett's misconduct, up to

and including Southwest's final decision to terminate Hackett's employment.  To that end,

---

[21] Pl.'s MTD App. 32-35.
[22] Pl.'s MTD App. 32-33 (emphases added).
[23] ECF No. 20, Countercl. ¶¶ 21-32.

Southwest takes the position that it had "just cause" to terminate Hackett based on witness testimony and documentary evidence indicating that Hackett took part in instigating AMFA members' unlawful overtime refusal.  The "just cause" standard is articulated in the parties' CBA, including in Article 9, Section 9(b), which provides that an employee will lose his or her seniority status if "discharged for just cause."[24]  AMFA submitted a grievance challenging Hackett's termination, which proceeded through the contractual arbitration mechanism established by the parties' CBA.[25]  At the conclusion of that process, an arbitrator sustained AMFA's grievance and reinstated Hackett's employment.[26]  Southwest has complied with that arbitrator award and resolved all remedy issues with AMFA and Hackett.

*Third*, AMFA alleges that Southwest violated a separate provision of the CBA concerning Southwest's practice of offering temporary leave to AMFA members who seek to take time off for "Union Business."[27]  Southwest avers that it denied the Union's leave requests due to manpower shortages caused by AMFA's overtime refusal, and that the parties' CBA— which gives Southwest discretion to deny Union Business Leave under such circumstances— supported those denials.[28]  Article 25, Section 5 of the CBA contains the relevant provision:

> Upon twenty four (24) hours notification by the Union Representative the Company will, **based upon operational requirements**, grant to any Employee(s) unpaid time off to perform Union business off the Company property.  In the event the Union business shall require an absence form work in excess of one (1) week, a Union leave of absence will be applied for in accordance with Article 12. **The Union will cooperate with the Company to avoid any negative impact on operations as a result of this section**.[29]

---

[24] Pl.'s MTD App. 38.
[25] Pl.'s MTD App. 43-44; Pl.'s MTD App. 70-71 (85:14-86:5).
[26] Pl.'s MTD App. 46-68.
[27] ECF No. 20, Countercl. ¶¶ 33-42.
[28] Pl.'s MTD App. 41.
[29] Pl.'s MTD App. 41 (emphases added).

## III.   STANDARD

### A.   Lack of Subject Matter Jurisdiction

Southwest moves to dismiss AMFA's Counterclaim for lack of subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Sanders v. Zwicker & Assocs., P.C.*, No. 3:13-CV-3998-N, 2014 WL 11456070, at *1 (N.D. Tex. Sept. 9, 2014) (Godbey, J.) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  When considering a motion to dismiss for lack of subject matter jurisdiction, a trial court "is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947)).  Under this standard, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case."  *Id.*; *see also In re The Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 601 (5th Cir. 2014) ("On issues involving jurisdiction, the district court may consider evidence outside the pleadings and resolve factual disputes.").  The proponent of a claim—in this case, AMFA, as the Counterclaimant—bears the burden of proof to show that subject matter jurisdiction exists.  *Sanders*, 2014 WL 11456070, at *1 (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996)).

## IV.   ARGUMENT

The three issues that underlie AMFA's Counterclaim—the outsourcing of select maintenance work during the job action, the termination of an AMFA Shop Representative, and the denial of Union Business Leave—are arbitrable "minor disputes."  This fact alone precludes the Court from exercising subject matter jurisdiction.  Meanwhile, the fact that each of these

discrete disputes is in some way temporally or factually related to AMFA's overtime boycott is irrelevant to the Court's subject matter jurisdiction analysis. Therefore, the Court should grant this motion and dismiss AMFA's Counterclaim with prejudice.

A.     **The RLA Imposes a Heavy Presumption In Favor of Arbitration**

Disputes under the RLA typically fall within one of two categories: "major disputes" and "minor disputes." The standard for distinguishing between major disputes and minor disputes is well established. A "major dispute" is a dispute arising from the negotiation of a CBA, whereas a "minor dispute" is a dispute over the interpretation or application of an existing agreement. *See, e.g.*, *Burley*, 325 U.S. at 723. In *Conrail*, the Supreme Court refined this distinction, stating:

> Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is *arguably justified* by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are *frivolous or obviously insubstantial*, the dispute is major.

491 U.S. at 307 (emphases added).

"Embedded in the [RLA] is a strong preference for arbitration, as opposed to judicial resolution of disputes." *Union Pac. R.R. Co.*, 876 F.3d at 264. In furtherance of that goal, where a minor dispute exists, the RLA mandates that a contractual grievance be submitted for binding arbitration. 45 U.S.C. §§ 153 First (*i*) & 184. Minor disputes are left to the *exclusive* jurisdiction of system boards, with final and binding arbitration, and not federal courts. *See Conrail*, 491 U.S. at 304.

Based on this statutory framework, the federal courts have imposed a very light burden on a party asserting a "minor dispute" when another party claims a "major dispute"—also known as a "status quo" violation in this context. *See, e.g.*, *Int'l Bhd. of Teamsters v. Southwest Airlines Co.*, 875 F.2d 1129, 1133 (5th Cir. 1989) ("Under Fifth Circuit precedent, a dispute is minor if the existing collective bargaining agreement *affords some arguable basis* for the underlying

-8-

action." (emphasis added)).  If there is any doubt as to the categorization of the dispute, courts

are to construe it as "minor."  *See Bhd. of Maint. of Way Emps. v. Atchison, Topeka & Santa Fe*

*R.R. Co.*, 138 F.3d 635, 643 (7th Cir. 1997); *Gen. Comm. of Adjustment, United Transp. Union v.*

*CSX R.R.*, 893 F.2d 584, 591 (3d Cir. 1990) (courts should treat "close cases" as minor disputes);

*Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 920 (7th Cir.

1985) ("[W]hen in doubt, the courts construe disputes as minor.").  As the Seventh Circuit

recently held, "in making the choice between major and minor, there is a large thumb on the

scale in favor of minor, and hence arbitration."  *Union Pac. R.R. Co.*, 876 F.3d at 267.

When assessing a company's contractual justification, courts must take care to avoid

"deciding" the dispute because extensive intrusion would undermine the adjustment board's

exclusive jurisdiction to resolve the matter.  *Conrail*, 491 U.S. at 318-19 ("[U]nder the RLA, it is

not the role of the courts to decide the merits of the parties' dispute.  Our role is limited to

determining where the 'arguably justified' line is to be drawn.");  *Southwest Airlines*, 875 F.2d at

1136 ("We reiterate, of course, that we are not actually deciding the applicability or scope of the

clause.  We decide only that the arbitration board is the forum authorized to construe the

clause.").  Even if a court believes that the union "could carry the day in arbitration," that would

not make the company's defense "frivolous" or "insubstantial" under the minimal burden.

*Conrail*, 491 U.S. at 317.

> **B.**     **Each Component of AMFA's Counterclaim Is a Minor Dispute Requiring**
> **Contractual Interpretation, and Southwest's Position as to Each Dispute Is**
> **Arguably Justified**

Under the RLA and controlling precedent, this Court has jurisdiction to resolve

Southwest's allegation that AMFA engaged in an unlawful job action.  The Court can adjudicate

that claim, however, without addressing the three, tag-along "minor disputes" alleged in

AMFA's Counterclaim.  *See, e.g.*, 45 U.S.C. §§ 153 First (*i*) & 184.  Regardless of whether

-9-

AMFA did or did not engage in an unlawful overtime refusal—and regardless of the outcome of Southwest's motion for partial summary judgment on that issue—the three disputes that comprise AMFA's Counterclaim are minor disputes.  There is no reason, let alone legal basis, to litigate these contractual matters in federal court.

> **1.    The parties' disagreement regarding the alleged outsourcing of select maintenance work is a minor dispute.**

The first discrete aspect of AMFA's Counterclaim concerns Southwest's allegedly improper decision to "outsource[] to a third party vendor ten stand-alone intermediate C Checks," work that AMFA alleges is "reserved under the current CBA to AMFA-represented members."  (ECF No. 20, Countercl. ¶ 13.)  According to AMFA, Southwest's decision to contract with a third-party vendor for aircraft maintenance constituted a "violation of Article 2 of the contract."  (*Id.*)

The contractual nature of this dispute is apparent on the face of AMFA's Counterclaim, simply by referencing AMFA's own allegations.  AMFA's position is that Southwest's subcontracting of maintenance work in February 2017 was "not authorized" by Article 2, Section 6 of the parties' CBA.  But, contrary to AMFA's position, the CBA—as cited in the above facts section—clearly permits Southwest to subcontract maintenance work to third-party vendors when there is a lack of manpower to meet all maintenance demands.  (Pl.'s MTD App. 32.) Whether or not Southwest was authorized to outsource the 10 C-Checks is something an arbitrator can decide based on his or her contractual assessment of Article 2, Section 3 and the evidence put forth by Southwest as to the basis and need for the temporary and select outsourcing in the February 10-20, 2017 timeframe.

Solidifying the minor dispute status for this allegation, AMFA has filed eight separate grievances regarding Southwest's use of third-party vendors to perform the ten "C-Checks."

(Pl.'s MTD App. 10-17.)  AMFA Representative Shane Flachman was responsible for

processing AMFA's grievances related to the alleged "outsourcing" referenced in AMFA's

Counterclaim.  (Pl.'s MTD App. 20-28 (68:4-11, 78:13-86:16).)  At his deposition, Flachman

confirmed that these grievances each allege contractual violations, and that the parties' system

board of adjustment has jurisdiction over the matter:

> Q. Is it AMFA's position that these [C-check] grievances raise alleged contractual
> violations?
>
> A. They do.
>
> Q. And is it AMFA's position that the parties' system board of adjustment has
> jurisdiction to address those allegations?
>
> A. It does, yes.
>
> Q. And does the system board of adjustment have authority, to the extent any
> contractual violation is found, to remedy those violations found?
>
> A. They do, yes.

(Pl.'s MTD App. 28 (86:6-16).)  AMFA, through its agent, has thus admitted minor dispute

status through this simple exchange.

Establishing that a contractual position is "[b]etter-than-frivolous" is "a low bar," *Union*

*Pac. R.R. Co.*, 876 F.3d at 267, and one that Southwest easily meets here.  Accordingly, this C-

Check outsourcing dispute must be resolved in arbitration under the parties' CBA.

> **2.      The parties' disagreement regarding the termination of an AMFA
> Shop Representative is a minor dispute that has already been resolved
> in arbitration.**

The second discrete aspect of AMFA's Counterclaim concerns the termination of AMFA

Shop Representative Ken Hackett.  (ECF No. 20, Countercl. ¶¶ 24-32.)  Once again, the

contractual nature of this aspect of AMFA's Counterclaim is demonstrated by the fact that

AMFA utilized the parties' contractual arbitration mechanism, under the contractual "just cause" standard for employee discipline, to resolve this very claim.

AMFA filed a grievance against Southwest shortly after the termination, arguing that Southwest lacked just cause to terminate Hackett. (Pl.'s MTD App. 43-44.) The parties arbitrated that dispute. On December 11, 2017, Arbitrator Arthur T. Voss issued a decision finding that Southwest did not have just cause, under the contract, to terminate Ken Hackett based on the contractual components of just cause and the burdens on Southwest to sustain the discharge. (Pl.'s MTD App. 45-68.) The fact that Arbitrator Voss sustained AMFA's grievance and reversed the termination, however, does not retroactively make AMFA's claim one subject to this Court's jurisdiction as a "major dispute." Again, Arbitrator Voss accurately framed AMFA's grievance as a contractual—i.e., "minor"—dispute. Arbitrator Voss explicitly defined his limited role with regard to AMFA's grievance, stating:

> Whether the Union or Company engaged in activity prohibited by the RLA is not the subject [of] this arbitration. Nor whether either violated the CBA. The issue here is confined to whether the Company had just cause, as required by the CBA, to terminate the Grievant for the reasons stated in his termination letter."

(Pl.'s MTD App. 51-52.) Under the same logic, AMFA cannot use its Counterclaim in this litigation to morph its grievance over Hackett's termination from an arbitrable "just cause" grievance into a "major dispute" to litigate in this Court.

Moreover, Southwest's position regarding Hackett's termination was arguably justified under the parties' CBA and in light of the facts known to Southwest. Witness testimony and documentary evidence supported Southwest's position that Hackett was actively encouraging an unlawful job action by directing Southwest's mechanics to refrain from accepting overtime shifts. Hackett's conduct was, in the Company's reasonable view, a violation of the "no-strike" clause in the parties' CBA. (Pl.'s MTD App. 40.) The Arbitrator's decision not to sustain the

Company's termination decision does not render the termination "frivolous" under the *Conrail* standard.  An arbitrator's review of "just cause" consideration is multi-faceted and rooted in decades-old arbitral precedent on various procedural and substantive factors, with the burden on the employer to prove just cause.

Finally, this sub-allegation in AMFA's Counterclaim is effectively moot.  Hackett has been returned to work and has received a "make whole" remedy of backpay from the arbitrator. (*See* Pl.'s MTD App. 45-68.)  That provides yet another basis for the Court to dispense with the claim and dismiss it with prejudice.

### 3.    The parties' disagreement regarding the denial of some AMFA requests for Union Business Leave is a minor dispute.

The final discrete aspect of AMFA's Counterclaim concerns Southwest's allegedly improper denial of AMFA members' requests for Union Business Leave.  (ECF No. 20, Countercl. ¶¶ 33-42.)  As with the other allegations, the contractual nature of this sub-allegation is made plain when AMFA cites to the alleged contract provision that Southwest breached— Article 25, Section 5.  (ECF No. 20, Countercl. ¶¶ 33, 37, 42.)  Further, AMFA also grieved Southwest's decision to deny Union Business Leave in February 2017.  (Pl.'s MTD App. 71-72 (86:6-87:13).)

AMFA's claims must be resolved by interpreting and applying Article 25, Section 5 of the parties' CBA.  Article 25, Section 5 of the CBA states that Southwest will consider requests for Union Business Leave "based upon operational requirements."  (Pl.'s MTD App. 41.) Southwest takes the position it had the right, under the plain CBA language, to temporarily deny leave under the circumstances of the operational emergency in February 2017.  Whether or not that emergency is found by this Court to have been caused by an unlawful overtime boycott, or

not, does not alter the jurisdiction of the parties' system board of adjustment to analyze the facts presented and render a final and binding ruling under the labor contract.

## V.      <u>CONCLUSION</u>

Whatever AMFA's motivation for filing its Counterclaim based on obvious contractual disputes, the time has come for the Counterclaim to be severed from this litigation and dismissed.  As AMFA already has done with the Ken Hackett termination allegation, the Counterclaim disputes all should be resolved through the system board of adjustment under the labor contract and not in federal court.  Mere factual or temporal overlap of the Counterclaim with Southwest's Complaint does not create federal court jurisdiction where none otherwise exists under well-established RLA policy favoring the arbitral resolution of labor contract disputes.

Dated: March 2, 2018                    Respectfully submitted,

                                        */s/ Ann Marie Arcadi*
                                        Ann Marie Arcadi
                                        Bar No. 00786994
                                        Michael A. Correll
                                        Bar No. 24069537
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        1717 Main Street, Suite 3200
                                        Dallas, TX 75201
                                        annmarie.arcadi@morganlewis.com
                                        michael.correll@morganlewis.com
                                        Tel: 214-466-4100
                                        Fax: 214-466-4001

                                        Thomas E. Reinert, Jr. (pro hac vice)
                                        David R. Broderdorf
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        1111 Pennsylvania Ave., N.W.
                                        Washington, DC  20004
                                        thomas.reinert@morganlewis.com
                                        david.broderdorf@morganlewis.com
                                        Tel: 202-739-3000
                                        Fax: 202-739-3001

                                        *Attorneys for Plaintiff Southwest Airlines Co.*

-15-

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2018, the foregoing will be filed with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to the following:

Mark D. Tillman
Jackson P. Mabry
TILLMAN BATCHELOR LLP
Tower 1320
1320 Greenway Drive, Suite 830
Irving, TX 75038
Telephone: (214) 492-5720
Fax: (214) 492-5721
Mark.tillman@tb-llp.com
Jackson.mabry@tb-llp.com

Nicholas Granath
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2915 Wayzata Blvd.
Minneapolis, MN 55405
Tel.: (612) 341-9080
Fax: (612) 341-9079
ngranath@ssmplaw.com

Lucas Middlebrook
199 Main Street, Seventh Floor
White Plains, NY 10601
Tel.: (914) 997-1346
Fax: (914) 997-7125
Lmiddlebrook@ssmplaw.com

*/s/ Ann Marie Arcadi*
Ann Marie Arcadi

DB1/ 95994034

-16-